UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

_____X

JANNA BERKOVSKY,    CASE NO.:

    Plaintiff,

  v.    **PLAINTIFF DEMANDS
A TRIAL BY JURY**

NCL (Bahamas) Ltd., *a Bermuda Company*,

    Defendant.
_____X

## COMPLAINT

Plaintiff, Janna Berkvosky (hereinafter referred to as "Plaintiff" and/or "Berkovsky"), by and through her counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendant NCL (Bahamas) Ltd., a Bermuda Company (hereinafter referred to as "Defendant" and/or "NCL"), and alleges as follows:

## NATURE OF CASE

1. This employment discrimination case is about an employer who subjected its female employee to relentless harassment, discrimination and retaliation ultimately culminating in the unlawful termination of the employee.

2. Plaintiff Berkovsky brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII").

3. Ms. Berkovsky seeks monetary relief to redress Defendant's unlawful employment practices in violation of the Title VII. Additionally, this action seeks to redress Defendant's deprivation of Ms. Berkovsky's personal dignity and her civil right to pursue equal employment opportunities.

4. Throughout the course of her employment, Ms. Berkovsky found herself at the center of a hostile work environment as part of a scheme orchestrated by Defendant to unlawfully eliminate Ms. Berkovsky and similarly situated employees from their positions.

5. Defendant's unrelenting discrimination against Plaintiff culminated with her unlawful termination.

6. At bottom, Defendant is liable for subjecting Ms. Berkovsky to a work environment infested with relentless discrimination and for wrongfully terminating because of her gender.

## JURISDICTION AND VENUE

7. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII").

8. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII").

9. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendant was located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Miami, Florida, which is located in Miami-Dade County, Florida.

## PROCEDURAL PREREQUISITES

10. Plaintiff has complied with all statutory prerequisites to file this action.

11. On or about March 30, 2020, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant as set forth herein, Charge number 15D-2020-00784.

12. An EEOC filing automatically operates as a dual FCHR filing.

13. On or about December 17, 2020, the EEOC issued Plaintiff a Right to Sue Letter.

14. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

15. This action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendant.

## PARTIES

11. At all material times, Plaintiff Janna Berkovsky is an individual female who is a resident of the State of Florida and resides in Miami-Dade County.

12. At all material times, Defendant NCL is a Foreign Profit Corporation duly authorized by the laws of the State of Florida with offices in Miami-Dade County, Florida.

13. Defendant NCL is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

14. At all material times, Defendant NCL employed OLIVER BUTON (hereinafter referred to as "BUTON") as a Director.

15. At all material times, BUTON held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including but not limited to the power to hire and fire Ms. Berkovsky.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

16. On or about July 31, 2017, Defendant hired Plaintiff as a "Buyer".

17. In or around December 2017, due to her exceptional work performance in her position, Plaintiff received a merit pay increase.

18. On or about January 18, 2018, because of Plaintiff's continued success and exceptional performance, Defendant promoted Plaintiff to "Service Manager."

19. In or around mid-2018, Plaintiff met with Daphne Daniel (hereinafter referred to as "DANIEL") and BUTON to discuss the constant pressures that Plaintiff endured as a result of only having one other co-worker helping her in her department. As part of the conversation, Plaintiff noted the difference in support staff between her department and other departments operated by men that contained more than enough staff to manage the workload, and accordingly requested to receive the same support. BUTON ignored Plaintiff's requests and did not attempt to assist with her department's needs.

20. After speaking with Plaintiff and DANIEL regarding the lack of support in her department, BUTON launched a campaign of retaliation and harassment against Plaintiff.

21. By means of example and not meant to be an exhaustive list, in or around August 2018, Plaintiff was advised by BUTON that she must respond to all e-mails during her vacation period in which Plaintiff received paid time off. As Plaintiff was an extremely hard-working employee, she did not protest BUTON's request and did as she was instructed.

22. Beginning on or about January 20, 2019, through May 2019, Plaintiff repeatedly renewed her complaints to BUTON and DANIEL regarding her excessive workload and reiterated the need to hire additional employees in order to timely process the sheer volume of work in Plaintiff's department. Specifically, Plaintiff again noted the difference in support staff between her department and other departments operated by men and requested to receive

the same support. BUTON again refused to take any steps to respond to Plaintiff's complaints.

23. On or around May 10, 2019, Plaintiff received an email from BUTON instructing her to work faster, as the volume of work that was accumulating. Plaintiff responded by again reiterating her request for additional employees to assist with the high volume of work. BUTON reassured Plaintiff that she was performing great work, stating, "**YOU ARE DOING A GREAT JOB AND WOULD NOT HAVE BEEN PROMOTED IF I DID NOT THINK YOU WERE CAPABLE.**" Plaintiff was again left to fend for herself while other departments operated by males contained more than enough support staff and were better supported by Defendant.

24. In or around June 2019, DANIEL submitted a finalized department plan to BUTON with an official request to promote Plaintiff to Senior Manager. BUTON approved this promotion, and Plaintiff received her second merit-based promotion to Senior Manager.

25. On or about October 07, 2019, Plaintiff applied for the open "Director of Strategic Alliances."

26. On or about October 22, 2019, Plaintiff followed up regarding her application to the promotion with Defendant's Human Resources Analyst. The Human Resources Analyst stated they were excited by Plaintiff's interest in the position and forwarded her resume to BUTON.

27. On or about October 22, 2019, Plaintiff interviewed with BUTON and DANIEL for the Director of Strategic Alliances position. While interviewing Plaintiff, BUTON brushed off Plaintiff's responses to his interview questions and continuously mentioned to Plaintiff that he wanted to her to remain in her current position.

28. After the interview, Plaintiff learned that BUTON openly remarked to DANIEL after Plaintiff's interview, "**I AM SURPRISED THAT [PLAINTIFF] APPLIED FOR THIS POSITION.**"

29. Furthermore, on or about October 28, 2019, Plaintiff was told by DANIEL that BUTON stated to her in regard to Plaintiff's application, "**I WANT TO HIRE MORE MEN.**" DANIEL and Plaintiff Berkovsky understood this to mean that BUTON wanted to hire a man for the position of Director of Strategic Alliances. During this same conversation, DANIEL further mentioned that the BUTON's comment was also directed to NATACHA MARTENELLO, Human Resources Representative.

30. On or about December 12, 2019, Plaintiff was called into a meeting with BUTON and Human Resources in relation to an investigation of allegations that were brought to the attention of Defendant after receiving an anonymous phone call alleging that Plaintiff was favoring two companies as part of her position.

31. On or about December 12, 2019, Plaintiff received a phone call from Human Resources Representative MICHELLE HICKS and BUTON advising her that although they could not find any wrongdoing by Plaintiff regarding the allegations, her employment with Defendant was nonetheless terminated due to poor work performance and lack of leadership.

32. Defendant unlawfully and wrongfully terminated Plaintiff Berkovsky because of her sex/gender and in retaliation for her participation in a protected activity, namely complaining of sex discrimination.

33. On or about December 13, 2019, Plaintiff met with former colleague, ERICA CRAWFORD, Interim Manager, who stated that during a meeting with BUTON

regarding Plaintiff's termination, he advised her that **HE WANTED TO REPLACE THE WOMEN WITH MEN.**

34. The aforementioned facts are just some of the examples of the discrimination Ms. Berkovsky suffered. Additionally, Ms. Berkovsky suffered claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine.

35. Defendant has established a pattern and practice of not only discrimination but also retaliation.

36. As a result of the acts and conduct complained of, Ms. Berkovsky has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails. Ms. Berkovsky also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

37. Ms. Berkovsky suffers from increased stress and anxiety. Similarly, Ms. Berkovsky has trouble sleeping as a result of Defendant's conduct.

38. Further, as a result of Defendant's unlawful employment practices, Ms. Berkovsky felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

39. As Defendant's conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Plaintiff respectfully seeks all available damages including but not limited to emotional distress, loss wages, back pay, front pay, statutory damages, attorney's fees, costs, interest and punitive damages from Defendant.

40. Defendant's actions and conduct were intentional and intended to harm Ms. Berkovsky.

41. Ms. Berkovsky has presented factual allegations that would permit any reasonable jury to award damages.

42. At bottom, Defendant is liable for their reckless disregard for Ms. Berkovsky' personal dignity and her civil right to pursue equal employment opportunity.

43. Ms. Berkovsky has suffered damages as a result of Defendant's unlawful employment practices.

## COUNT I- SEX DISCRIMINATION IN VIOLATION OF TITLE VII

41. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

42. Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

43. Defendant NCL is prohibited under Title VII from discriminating against Plaintiff because of her sex/gender with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

44. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender.

45. Defendant NCL's Employee/Manager/Supervisor BUTON directed repeated discriminatory comments to Plaintiff based on her sex/gender, including denying Plaintiff a promotion and eventually wrongfully terminating her employment.

46. Further, the discriminatory and disparate treatment of Plaintiff included, but was not limited to, ignoring Plaintiff's requests for support while providing such support for her male colleagues, refusing to promote Plaintiff despite her exceptional work performance as evidenced by multiple merit-based promotions and pay increases, and wrongfully terminating Plaintiff after her complaints of sex discrimination while simultaneously expressing his desire to hire more men in positions of leadership.

47. BUTON held a position of authority and supervision over Plaintiff Berkovsky.

48. The discriminatory actions of Defendant against Plaintiff, as described and set forth above constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of her sex/gender, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

49. The Defendant's discharge of Plaintiff was, in whole or in part, because she was a woman.

50. Defendant treated Plaintiff less favorably than similarly situated employees outside the protected class.

51. Furthermore, Defendant, by and through its agents, permitted the discrimination against Plaintiff by failing to take corrective action and otherwise prevent BUTON's sexual harassment after Plaintiff directly reported the sexual harassment to each.

52. Defendant NCL was notified about and was otherwise aware of the discrimination directed at Ms. Berkovsky by Defendant's employee, BUTON, based on her sex/gender, and Defendant NCL failed to take appropriate corrective action.

53. Defendant NCL violated Title VII by unlawfully discharging and discriminating against Ms. Berkovsky based on her sex/gender, of which the Defendant was fully aware.

54. As a result of her sex/gender, Defendant NCL subjected and permitted its employees to expose Plaintiff to discrimination and unlawful discharge.

55. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

56. Defendant NCL's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

57. Conduct of Defendant NCL and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

58. Plaintiff Berkovsky has been damaged by the illegal conduct of Defendant.

## COUNT II-
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

59. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

60. Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

61. Defendant NCL is prohibited under Title VII from creating a hostile work environment based on Plaintiff's gender/sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

62. Ms. Berkovsky was subject to unwelcomed, offensive, and sexually harassing conduct during her employment with Defendant NCL by BUTON in the form of repeatedly ignoring Plaintiff's requests for support while providing such support for her male colleagues, refusing to promote Plaintiff despite her exceptional work performance as evidenced by multiple merit-based promotions and pay increases, and wrongfully terminating Plaintiff after her complaints of sex discrimination.

63. Furthermore, Defendant NCL's Employee/Manager/Supervisor BUTON repeatedly directed harassing comments to Plaintiff based on her sex/gender throughout her employment, including while denying Plaintiff a promotion and after eventually wrongfully terminating her employment.

64. BUTON held a position of authority and supervision over Plaintiff Berkovsky.

65. Defendant's conduct occurred because of Plaintiff's legally protected characteristic, her sex/gender, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

66. The harassing actions of Defendant against Plaintiff, as described and set forth above constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of her sex/gender, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

67. The harassing conduct was directly connected to Ms. Berkovsky's sex/gender.

68. Plaintiff did not welcome Defendant's discriminatory conduct or comments.

69. When Ms. Berkovsky voiced her objections to this harassing and discriminatory treatment to Human Resources, not only did Defendant fail to address her concerns, but they also continued the pattern of discrimination by making further discriminatory comments.

70. Defendant NCL was notified about and was otherwise aware of the sexually harassing and discriminatory conduct directed at Ms. Berkovsky by Defendant's employee, BUTON, and Defendant NCL failed to take appropriate corrective action.

71. Defendant, by and through its agents, permitted the unwelcomed, offensive, and sexually harassing conduct by failing to take corrective action and otherwise prevent BUTON's sexual harassment after Plaintiff directly reported the sexual harassment.

72. At all times relevant, Defendant, by and through its employees, intended to unlawfully create a hostile work environment in the terms and conditions of her employment because of her sex/gender, and Defendant did unlawfully subject Plaintiff to a hostile work environment in the terms and conditions of her employment because of her sex/gender in violation of Title VII.

73. As a result of her gender/sex, Defendant NCL subjected and permitted its employees to expose Plaintiff to a sexually-hostile work environment and unlawful discharge.

74. Defendant violated Title VII by unlawfully discharging and sexually harassing Plaintiff based her gender/sex, of which the Defendant was fully aware.

75. Defendant abused its supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Ms. Berkovsky's working environment would believe Defendant's conduct was severe or pervasive enough to have altered the terms and

conditions of employment and render the working environment intimidating, hostile or abusive.

76. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

77. Defendant NCL's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

78. Conduct of Defendant NCL and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

79. Plaintiff Berkovsky has been damaged by the illegal conduct of Defendant.

## COUNT III - RETALIATION IN VIOLATION OF TITLE VII

80. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

81. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or

participated in any manner in an investigation, proceeding, or hearing under this subchapter."

82. Defendant is prohibited under Title VII from retaliating against Plaintiff because she engaged in a protected activity, namely reporting and complaining of discrimination and harassment, with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

83. Defendant NCL engaged in unlawful employment practice prohibited by Title VII by retaliating against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to the unlawful employment practices of Defendant NCL.

84. Plaintiff Berkovsky reported the ongoing sexual harassment to Defendant NCL's Human Resources, namely Mr. BUTON, to no avail.

85. Plaintiff opposed discriminatory conduct by Defendant which is prohibited by Title VII when she complained to Defendant about the sex/gender discrimination and hostile work environment that she was subjected to as described and set forth above.

86. Plaintiff's complaints involved Defendant's unlawful and discriminatory actions and therefore constituted protected activity under Title VII.

87. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Title VII by Defendant NCL's employees had occurred.

88. Ms. Berkovsky complained of her supervisor's refusal to grant her sufficient support staff as it had done with her male counterparts and refusal to grant her a promotion based on her sex/gender.

89. At all times relevant, the unlawful retaliation by Defendant employees against Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made unlawful by Title VII and would not have occurred but for that opposition.

90. At all times relevant, Defendant NCL's employees intended to unlawfully retaliate against Ms. Berkovsky in the terms and conditions of her employment in violation of Title VII because she opposed a practice made unlawful by Title VII, and Defendant NCL unlawfully terminated Ms. Berkovsky because of that opposition.

91. At all material times, the employer exhibiting retaliatory conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

92. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

93. Plaintiff has been damaged by the illegal conduct of Defendant.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendant in an amount to be determined at the time of trial, plus interests, including but not limited to all emotional distress and economic damages, punitive damages, liquidated damages, attorney's fees, costs, disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for the claims set forth in the complaint.

Dated: Miami, Florida
March 16, 2021

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

/s/ *Lauren Tobin*

Lauren Tobin, Esq.
Florida Bar No. 1024850
Lauren@dereksmithlaw.com
701 Brickell Avenue, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
lauren@dereksmithlaw.com